UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TALLA KEBE, ) | |
|     *Plaintiff*, ) | |
| ) | |
|     *vs.* ) | 1:11-cv-01130-JMS-DKL |
| ) | |
| HON. JANET NAPLITANO, Secretary of Department of Homeland Security; and KAMSING V. LEE, Field Office District Director, United States Citizenship and Immigration Services, ) ) ) ) ) | |
|     *Defendants.* ) | |

## ORDER

The Plaintiff in this immigration action, Talla Kebe, challenges the denial of his I-485 application for adjustment of status. He has sued, in their official capacities, the Secretary of the Department of Homeland Security ("DHS") and a Field Office District Director of the United States Citizenship and Immigration Services ("USCIS").[1]  Presently before the Court is the Defendants' motion to dismiss. [Dkt. 10.]  As filed, the Defendants seek a dismissal under Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction; or under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. [*See id.*]

### BACKGROUND

According to his Complaint, Mr. Kebe is a citizen of Senegal. [Dkt. 1 ¶ 5.]  In 2001, he entered this country on a six-month tourist visa. [*Id.* ¶ 15.]  When it expired, however, he failed to leave. [*Id.*]

---

[1] Although his Complaint purports to raise a class action, Mr. Kebe has not yet filed a motion for class certification. The Court need not and does not address the claims of the putative class members. *See Wiesmueller v. Kosobucki*, 513 F.3d 784, 786 (7th Cir. 2008).

In 2004, "an immigration charlatan" convinced Mr. Kebe that he was eligible for temporary residency under Title II of the Immigration Reform Act of 1986 (the "Reform Act"), 8 U.S.C. §§ 1151 *et seq.*, and filed an I-687 on his behalf to request that temporary residency. [Dkt. 1 ¶ 19.] In fact, Mr. Kebe was ineligible for temporary residency under the Reform Act because he had not been unlawfully present in the United States since January 1, 1982, as required. [*Id.* ¶¶ 15-16.]

The Reform Act permits applicants to request permission to leave the country (called "advanced parole") for short periods, while their I-687 is pending, without jeopardizing their applications. [*Id.* ¶ 18 (citing 8 U.S.C. § 1255a(a)(3)(B) and implementing regulations).] Mr. Kebe requested and received advanced parole, leaving the United States in December 2005 and returning in February 2006. [*Id.* ¶ 19, 20.] Upon his return, Mr. Kebe was paroled back into the United States "to permit [him] to continue [his] application for temporary resident status." [*Id.* ¶ 21.]

Because Mr. Kebe had a pending I-687 for temporary residency under the Reform Act, Mr. Kebe received the parole form, Form I-512L, applicable under the Reform Act. [*Id.* ¶ 21.] That form contained the following notice:

> Authorization: The holder is authorized to enter the United States temporarily for the purpose of pursuing an application for temporary resident status under 245A of the Immigration and Nationality Act (INA). This document is valid for multiple applications for parole into the United States if presented prior to the date noted above. Parole is authorized for one year.
>
> Notice to Applicant: Presentation of this authorization at the port-of-entry will permit you to continue your application for temporary resident status upon your parole into the United States. However, if you have been convicted of any felony, three or more misdemeanors, have assisted in the persecution of any person or persons (on account of race, religion, nationality, membership in any particular social group, or political opinion), or if you are excludable under any part of section 212(a) of the Act whose provisions may not be waived, you may be ineligible for legalization and may be subject to removal proceedings and/or expedited re-

> moval at the port-of-entry.  In addition, your application for temporary resident status requires continuous residence as defined in Title 8, Code of Federal Regulations, Section 245a.1 and 245a.2.  Any single or aggregate absences exceeding the regulatory limits may result in denial of your application for temporary or permanent residence.

[Dkt. 1 ¶ 22.]

The USCIS has a different form for individuals who request advance parole but are not eligible for temporary status under the Reform Act.  Unlike the form for the Reform Act, the non-Reform-Act form specifically warns individuals about the potential consequences of Section 212(a)(9)(B) of the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. §§ 1101 *et seq.*, which provides in part that "any alien … who … has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of such alien's departure or removal from the United States is inadmissible," 8 U.S.C. § 1182(a)(9)(B)(i)(II).  The non-Reform-Act form reads in part as follows:

> NOTICE TO APPLICANT:  Presentation of this authorization will permit you to resume your application for adjustment of status upon your return to the United States.  If your adjustment application is denied, you will be subject to removal proceedings under section 235(b)(1) or 240 of the Act. If after April 1, 1997, you were unlawfully present in the United States for more than 180 days before applying for adjustment of status, you may be found inadmissible under section 212(a)(9)(B)(I) of the Act when you return to the United States to resume the processing of your application.  If you are found inadmissible, you will need to qualify for waiver of inadmissibility in order for your adjustment of status application to be approved.

[Dkt. 1 ¶ 23.]

Mr. Kebe eventually married a U.S. citizen and consequently, in November 2010, filed paperwork, an I-485, to have an adjustment of status to that of a lawful permanent resident.  [*Id.* 9-10.]  The USCIS issued a notice of intent to deny his adjustment, in May 2011, citing the requirements of Section 212(a)(9)(B) of the INA.  [Dkt. 1 ¶ 13.]

Shortly before the filing of this action, Mr. Kebe was ordered to appear for removal proceedings before an immigration judge of the U.S. Department of Justice. [Dkt. 10-5.] Mr. Kebe advises that his initial appearance before the immigration court is currently scheduled for December 5, 2012. [Dkt. 15 at 7.]

Through this action, Mr. Kebe seeks relief under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 500 *et seq.*, the INA, and also mandamus and declaratory judgment.

## DISCUSSION

Because jurisdictional inquiries precede those on the merits, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), the Court will begin by considering subject-matter jurisdiction. Finding that no subject-matter jurisdiction exists, the Court will end its discussion there, without addressing the merits.

"To maintain an action against the United States in federal court, a plaintiff must identify a statute that confers subject-matter jurisdiction on the district court and a federal law that waives the sovereign immunity of the United States to the cause of action." *Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003) (citations omitted) (per curiam). If no subject-matter jurisdiction exists, the Court must dismiss the action under Federal Rule of Civil Procedure 12(b)(1). The party claiming subject-matter jurisdiction exists bears the burden of proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

Here, Mr. Kebe argues that his action is proper under the APA, the INA, the Mandamus Act, and/or the Declaratory Judgment Act.

### A.  The APA

The APA waives federal sovereign immunity and creates a cause of action for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Originally the Defendants argued that the USCIS' denial of the I-485 Application was not

"final" for the purposes of the APA and, if it were, that Mr. Kebe must exhaust his administrative remedies through a hearing before an immigration judge (an "IJ") and later the Board of Immigration Appeals, both of which are housed within the U.S. Department of Justice. In their Reply, they reversed course, arguing that the denial is final and that no administrative remedies exist. [*See* dkt. 16 at 2-3.] Given the Court's "independent duty" to assess jurisdiction, the Court will consider the issues despite the Defendants' withdrawal of them. *Adkins v. Ill. Cent. R.R. Co.*, 326 F.3d 828, 830 (7th Cir. 2003).

    *1. Finality*

The Supreme Court uses a two-part test for APA finality: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quotations and citations omitted).

The Defendants argued that those standards could not be met because Mr. Kebe would be able to renew his I-485, *de novo*, in his removal proceeding before the IJ. They relied upon authority from the Ninth Circuit that because an IJ "may completely wipe away USCIS's prior decision," the USCIS' denial of an adjustment of status is not final for the purposes of the APA, *Cabaccang v. United States Citizenship & Immigration Servs.*, 627 F.3d 1313, 1316 (9th Cir. 2010) (citing, among others, 8 C.F.R. § 1245.2(a)(1)(i) ("In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.")). That case rejected Mr. Kebe's argument that the decision should be deemed final as to the USCIS (a branch of DHS) because the USCIS

could do nothing else with the denial; everything is now in the hands of the Department of Justice. *See id.* The case said nothing, however, about Mr. Kebe's alternative arguments that the denial of his I-485 means that he currently is not authorized to work or able to return from traveling abroad. *See id.*

In their Reply, the Defendants argued that, upon closer reading, the regulations do not permit the IJ to consider a renewed I-485. The problem, Defendants say, is that 8 C.F.R. § 1245.2(a)(1)(i), relied upon in *Cabaccang*, does not apply to "an arriving alien," 8 C.F.R. § 1245.2(a)(1)(i), which they argue that Mr. Kebe is.

The Defendants' Reply, however, incorrectly understands what it means to be an "arriving alien." Mr. Kebe cannot be one because he "applied for and obtained [advance parole] in the United States prior to [his] departure from and return to the United States." 8 C.F.R. § 1.2. *See also Samirah v. Holder*, 627 F.3d 652, 658 (7th Cir. 2010) (explaining that "for purposes of removal an alien granted advance parole is not deemed to be [an arriving alien] upon his return to the United States") (citing 8 C.F.R. § 1.1(q)).[2] Indeed, it is the provision of the advance parole that underpins Mr. Kebe's action here.

Despite the IJ's ability to overturn the USCIS' denial of his adjustment, the Court finds that Mr. Kebe seeks review of a "final" order. The IJ operates as an arm of the Attorney General, on behalf of the Department of Justice. The DHS and its subordinate USCIS have nothing further to do with the denial of Mr. Kebe's adjustment. From their perspective—the Defendants in this action—their denial represents the "culmination" of their decisionmaking process, *Bennett*, 520 U.S. at 177, thus satisfying the first part of the test of finality. And as for the second part, legal consequences from that action, *id.*, the Defendants do not dispute that the denial of

---

[2] As of November 28, 2011, § 1.2 replaced § 1.1, but not in any way material to this decision.

adjustment precludes Mr. Kebe from re-entry after traveling or working. The second part is, therefore, also met.

Nonetheless, the Court finds that the APA does not authorize review. As indicated previously, a reviewable final action is one "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Because removal proceedings have already begun, Mr. Kebe will appear before an IJ with the power to set aside any erroneous denial of adjustment. If the IJ rules against him, Mr. Kebe can appeal to the Board of Immigration Appeals and, from there, directly to the Seventh Circuit. *See* 8 U.S.C. § 1252. The Supreme Court has found that the availability of review actions in the Courts of Appeals can preclude APA actions in district courts. *FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468-69 (1984).

The two arguments that Mr. Kebe advances about the alleged inadequacy of the removal proceedings are unpersuasive. First, he argues that the IJ will not decide whether the USCIS acted arbitrarily and capriciously in denying his I-485, as APA review would require the Court to decide. [*See* dkt. 15 at 8.] That argument is correct as far as it goes, but it does not go very far: Rather than applying the narrow standard of review under the APA, the IJ will instead decide the propriety of his adjustment *de novo*. *Cabaccang*, 627 F.3d at 1316. The IJ proceeding, therefore, is superior—not inadequate. As for his second argument, Mr. Kebe says that proceedings before the IJ take a long time; in his "counsel's experience with the immigration court in Chicago, an 'individual hearing' may not come until around 2014." [Dkt. 15 at 8.] That argument fails, however, because the record does not establish that counsel has asked the immigration court to advance the hearing but has been refused. If appropriate, IJs (like other judges) have the

ability to "advance a hearing date."  Office of the Chief Immigration Judge, Immigration Court Practice Manual 96 (2008).[3]

Accordingly, the Court finds that APA review is not available because any detriment from the final order at issue is subject to "[an]other adequate remedy in a court."  5 U.S.C. § 704.

### 2. *Exhaustion of Remedies*

Even if the order at issue were otherwise subject to review under the APA, the Court still could not currently maintain the action because Mr. Kebe has not yet exhausted his administrative remedies.  "[A]ny definitive agency decision is considered 'final,' and therefore reviewable, unless the agency's regulations [or a statute] require exhaustion as a prerequisite to judicial review."  *Shawnee Trail Conservancy v. United States Dep't of Ag.*, 222 F.3d 383, 389 (7th Cir. 2000).  The Seventh Circuit has held that actions to review denials of adjustment status are ordinarily "premature" unless and until review of the denial is obtained from the Board of Immigration Appeals.  *McBreaty v. Perryman*, 212 F.3d 985, 986 (7th Cir. 2000).  While exhaustion can be excused if exhaustion would lead to "unreasonably delay or an indefinite time frame for administrative action," or if "agency lacks the ability or competence to resolve the issue or grant the relief requested," *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002) (quotation and citations omitted), those exceptions are inapplicable for the reasons already discussed, above.  Mr. Kebe

---

[3] Available online at http://www.justice.gov/eoir/vll/OCIJPracManual/Chap%205.pdf.

makes no claim that either of the two other exceptions—futility and constitutional challenges, *id.*—applies.[4]

### B.  The INA

Mr. Kebe's Complaint appears to allege that two sections of the INA authorize subject-matter jurisdiction for this action:  § 201(b)(2)(A)(i), 8 U.S.C. § 1151(b)(2)(A)(i); and § 245, 8 U.S.C. § 1255(a).  [*See* dkt. 1 ¶¶ 37, 41.]  Neither provision expressly authorizes an independent action (in contrast to the INA's provision of judicial review for orders of removal, INA § 242, 8 U.S.C. § 1252).  Mr. Kebe's Response does not contend otherwise; he offers no argument that these sections authorize his action. [*See* dkt. 15 at 11-15.]  The Court, therefore, finds that those provision of the INA confer subject-matter jurisdiction for the Court to review the denial of adjustment here.

### C.  The Mandamus Act

The Mandamus Act grants district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  For mandamus relief, a plaintiff must establish three elements:  "(1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available."  *Iddir*, 301 F.3d at 499.  If any one of those three elements fails, no subject-matter jurisdiction exists.  *See id.* (finding no jurisdiction where the second element failed).

---

[4] Mr. Kebe did use the word "futility" in one of his headers.  [*See* dkt. 15 at 6.]  By futility, Mr. Kebe appears to mean the IJ will take too long and cannot engage in arbitrary-and-capricious review of the USCIS' denial of adjustment.  [*See id.* at 6-7.]  The Court has already addressed those points.  To the extent that he meant actual futility, Mr. Kebe has waived that argument for lack of cogent development.  *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived…." (citations omitted)).

Whether or not Mr. Kebe could establish the first two elements of a mandamus claim, the Court has already found that the removal proceedings before the IJ afford him an adequate remedy. He cannot, therefore, maintain an action for mandamus.

### D.  The Declaratory Judgment Act

"[B]ecause the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction, the district court must possess an independent basis for jurisdiction." *GNB Battery Technologies v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995) (citation omitted). As Mr. Kebe has been unable to assert any other independent basis for jurisdiction, the Declaratory Judgment Act does not confer jurisdiction to consider Mr. Kebe's action.

### CONCLUSION

The Court lacks subject-matter jurisdiction to decide this action. Accordingly, the Defendants' motion to dismiss, [dkt. 10], is **GRANTED**, and this action is **DISMISSED WITHOUT PREJUDICE**. *T.W. v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997) ("[W]hen a suit is dismissed for want of subject-matter jurisdiction, that is, because the court has no power to resolve the case on the merits even if the parties are content to have it do so, it is error to make the dismissal with prejudice." (citations omitted)).

04/23/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Swaray Edward Conteh
contehlaw@att.net

Craig A Defoe
U.S. DEPARTMENT OF JUSTICE
craig.defoe@usdoj.gov

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov